CASE 109—ORDINARY—MARCH 18, 1884.

81 673
109 30

81 673
126 554

# Pepper v. Mayes, &c.

APPEAL FROM CALDWELL CIRCUIT COURT.

1. The general rule as to ministerial officers is that if a process, whether a warrant for another or other process, is apparently regular and issues from a court having jurisdiction of the subject-matter, and the officer has no knowledge of any material irregularity or any illegality in the issuing of the process, he is protected in its execution; but the protection extends only so long as he acts in good faith in the discharge of his duty under the process. Beyond this he must answer as a private citizen for any oppression or wrong doing.

2. The general rule applicable to justices of the peace, as to all judicial officers, is that where the officer has jurisdiction of the person and of the subject-matter he is exempt from suit by a private individual for damages so long as he acts within his jurisdiction and in a judicial capacity.

3. Chapter 2 of title 10, Criminal Code, makes no provision for jailing or guarding one arrested on a peace warrant, but the authority to arrest, to try, and to require bond necessarily implies that the accused may be restrained of his liberty within a reasonable limit pending or preparatory to such an examination; and, by analogy to the provisions of the Code governing the postponement of an examining trial, it is discretionary with the magistrate whether he will commit the accused to jail or put him under guard.

The defendant in a peace warrant was brought before a justice at 11:30 P. M. Saturday. Being at the time crazed with drink, and manifesting his dangerous character in the presence of the justice, that officer committed him to jail. In an action against the justice for false imprisonment it is held that he acted properly in committing the defendant to jail, as it was too late to try him before midnight, and the law does not require a justice to hold an examining court on the Sabbath, although he may do so; nor does the law permit such an officer to try one who is temporarily incapacitated by drink to attend to or understand the charge preferred against him.

L. PEPPER, T. A. LOWRY, AND G. W. DUVALL, FOR APPELLANT.

The petition stated a good cause of action against each of the defendants, and the demurrer should have been overruled. (Crim. Code, p. 27, sec. 115; 14 B. Mon., 39; 7 Bush, 532; 10 Bush, 449.)

The court refused to properly instruct the jury, and the instructions given were prejudicial to appellant. (7 Mon., 560; 3 Marshall, 98; 18 B. Mon., 744; 1 B. Mon., 360; 3 Mon., 115; Gen. Stat., 121, secs. 15 and

Pepper v. Mayes, &c.

18; *Ib.*, 317, sec. 1; Crim. Code, 13, sec. 55; *Ib.*, sec. 384; *Ib.*, 9, sec.
28; *Ib.*, 13, sec. 55; *Ib.*, 59, secs. 323, 324–325; *Ib.*, 72, secs. 384–387;
66 Sick. N. Y. Reports, 368; 4 Conn., 118; 19 Johnson, 39; 35 Ind.
285; 16 Barb., 303; 29 Howard, 185; N. C. Reports, 249; *Ib.*, pp. 313–
316; 1 Bush, 23; 3 Met., 319; 1 How. Delaware Reports, 143; 2 Bibb,
96; Gen. Stat., 317, sec. 1; Gen. Stat., 317, sec. 1 and p. 121; Crim.
Code, 9, sec. 28; *Ib.*, 13, sec. 55; *Ib.*, 59, secs. 332–335; *Ib.*, 72, secs.
384–387; *Ib.*, 15, sec. 17.)

The court should have given instruction No. 6. (Harris' Principles of
Criminal Law, 88; 1 Duvall, 63; 18 B. Mon., 693; *Ib.*, 494; 1 Green-
leaf, secs. 33–34.)

JAS. R. HEWLETT for APPELLEE A. C. MAYES.

The appellee, A. C. Mayes, acted within his jurisdiction as a justice of the
peace.

A magistrate is not liable in damages for an erroneous judgment. (Cooley
on Torts, chap. 14, p. 403.)

F. W. DARBY for APPELLEES PICKERING and POOL.

The demurrer of Pickering and Pool should have been sustained. (Cooley
on Torts, 172; *Ib.*, pp. 439, 60–1–2–3–4–5–6–7; 3 B. Mon., 347; 2 Bac-
aby, 740.)

The question of motive can not be inquired into by the court. (Cooley on
Torts, pp. 688–9–90.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

This is an action by appellant against appellees, A. C.
Mayes, R. R. Pickering, and J. M. Pool, seeking damages
for alleged false imprisonment. A demurrer was sustained
to the petition as to Pickering and Pool, and overruled as
to Mayes. There was a trial as to Mayes, a verdict for
defendant, and an appeal to this court. The petition states,
in substance, that appellees "wickedly, wilfully, and with-
out authority, falsely and maliciously imprisoned" appel-
lant. It is stated that appellant was arrested by Pickering,
the sheriff, on a warrant "corruptly" issued by Mayes, a
justice of the peace, and committed to the charge of the
jailor, Pool, by written order of defendant Mayes.

It is complained that the court erred in sustaining a de-
murrer to the petition and in dismissing it as to Pickering

and Pool, and that the court erred on the trial of Mayes, both in giving and in refusing instructions.

The general rule as to ministerial officers is that if a process, whether a warrant for arrest or other process, is apparently regular, and issues from a court having jurisdiction of the subject-matter, and the officer has no knowledge of any material irregularity or any illegality in the issuing of the process, he is protected in its execution. But it must always be understood that the protection extends only so long as he is in good faith in discharge of his duty under the process. Outside of this he must answer as a private citizen for any oppression or wrong doing. It appears from the petition in this case that both Pickering and Pool were acting in good faith and in obedience to directions issued from a judicial officer of competent jurisdiction, which were fair upon their face, and without any knowledge or intimation, on the part of appellees, of any illegality. This being the case, the petition, under the rule just stated, failed to state a cause of action against either Pickering or Pool, and the demurrer as to them was properly sustained. (2d vol. Hilliard on Torts, chap. 29, p. 126; Cooley on Torts, 459.)

The general rule applicable to justices of the peace, as to all judicial officers, is that where the officer has jurisdiction of the person and of the subject-matter he is exempt from suit by a private individuals for damages so long as he acts within his jurisdiction and in a judicial capacity. (2d vol. Hilliard on Torts, chap. 28, p. 108; Cooley on Torts, p. 409.)

Judge Cooley, in his work on Torts, p. 408, in reference to this matter, says:

" Whenever, therefore, the State confers judicial powers upon an individual, it confers them with full immunity from

private suits.    In effect, the State says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the State and the peace and happiness of society; that if he shall fail in a faithful discharge of them he shall be called to account as a criminal; but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages.''    This rule '' applies to the highest judge in the State or nation, but it also applies to the lowest officer who sits as a court and tries petty causes, and it applies not in respect to their judgments merely, but to all process awarded by them for carrying their judgments into effect.''

There are dicta in several cases in this State which tend to the conclusion that an action for damages will lie against a justice of the peace for acting corruptly while acting or deciding within his jurisdiction, as in the case of Revill, &c., v. Pettit, 3 Met., 319.    That was a case where one justice of the peace assumed to hold an examining court alone, and to commit to jail one charged with a felony, when the Criminal Code expressly requires that on a charge of felony two magistrates are required to hold an examining court and to admit to bail or commit to prison.    That was a clear case of the usurpation of a jurisdiction not pertaining to the office of magistrate, and such a case as did not call for the expression of an opinion as to whether the justice would have been answerable in damages for corruption while acting clearly within his jurisdiction and in a judicial matter.

To apply the rule in the sense above stated, the office must be purely a judicial one. For example, it has been held that the sheriff and the judges of an election, in accepting or rejecting a vote, act in a *quasi* judicial capacity, and may be held to answer in damages for rejecting a vote when actuated by impure or corrupt motives. (18 B. M., 712, Morgan v. Dudley.)

The warrant issued in this case was a peace warrant, taken out on oath as required by the Code. Appellant was arrested on the warrant, and brought before appellee, Mayes, at between eleven and twelve o'clock on Saturday night. At the time he was so much under the influence of intoxicating spirits that he staggered in attempting to walk, and his articulation was so obstructed by the same cause that he could scarcely be understood when he attempted to speak. By reason of the lateness of the hour the justice issued a mittimus, in which it was stated that appellant refused to give bail, under which he was delivered to the jailer, and kept in custody until the following evening.

It is insisted for appellant that the justice should have indorsed on the mittimus the amount of bail required of appellant, in order that he might have an opportunity to give the same after commitment, and that he should have been placed under guard instead of being sent to jail. The provisions of the Code, title 10, chap. 2, under which this proceeding was had, makes no provision for taking bond of the accused before or pending the final examination. Such an indorsement, then, would have been without authority, and would have conferred no authority on any one else to take the bond.

The next inquiry is, Did the justice act without authority when he committed appellant to jail? There is in this chapter no provision for jailing or guarding one arrested on a

Pepper v. Mayes, &c.

peace warrant, except after final examination the accused may be sent to jail for three months by the proper tribunal, or until the bond required of him is executed.  But the authority to arrest, to try, and to require bond, necessarily implies that the accused may be restrained of his liberty, within a reasonable limit, pending or preparatory to such an examination.  The law does not require a judicial officer to hold his court at all hours of the night and day; nor does it require that he shall do violence to his conscience by holding an examining court on the Sabbath—although the proceedings of an examining court held on that day may be valid.  Nor does the law require or permit such an officer to try one who is temporarily incapacitated by drink to attend to or understand the charge preferred against him.  The situation was this: the hour, 11:30 P.M. Saturday; appellant brought before the justice on a warrant sworn out on the affidavit of appellant's son, in which the son makes oath that appellant has threatened to take his life, and that it will be endangered so long as appellant is not restrained of his liberty.  Appellant is crazed with drink, and manifests his dangerous character in the presence of the court by cursing an officer.  What, then, was the justice to do? It was manifestly too late to try the accused before midnight, if he had been in condition, and the law does not compel the justice to hold his court on the Sabbath.  Certainly the justice would not have been justified in turning the appellant loose upon the community, with the probability, as shown by the affidavit, that he would take the life of his son before morning.  But, says counsel for appellant, he should have been placed under guard.  For this there is no more authority than there is for committing to jail. In either case the authority must be derived from necessity

Pepper v. Mayes, &c.

and by analogy follow the provisions of secs. 323–324 of Criminal Code in cases of postponement of an examining trial; but in such case it is discretionary with the magistrate whether he will commit the accused to jail or put him under guard. If appellant had been carried before the justice, without a warrant even, in the state of intoxication that he was when sent to jail, it would have been the duty .of the magistrate to have sent him to jail till he was sober. (Sec. 398 of Criminal Code.) In such case there can be no pretense that an action would lie against the magistrate for so doing. Does it matter that the mittimus simply states that appellant refused and neglected to give bond, or that appellant was up on a warrant instead of being brought up without a warrant? If an action for damages would not lie in the one case, how can it lie in the other? There is not the slightest proof of oppression, corruption, or illegality in the action of the justice. He appears to have acted humanely and within his jurisdiction.

The law, as we have attempted to state it, will answer appellant's objection to the action of the court in refusing and in giving instructions. Several of appellant's instructions have no evidence to support them, and they are all at variance with the law as we have stated it.

Judgment affirmed.